**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 22-81923-CIV-CANNON/Reinhart**

**SCOTT FINEMAN et al**,

      Plaintiffs,

v.

**FERRAGAMO USA INC.**, **et al**,

      Defendants.

_____/

**ORDER GRANTING**
**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

    **THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss Plaintiffs'

Amended Complaint (the "Motion"), filed on February 13, 2023 [ECF No. 22].  The Court has

reviewed the Motion [ECF No. 22], Plaintiffs' Response in Opposition [ECF No. 27], Defendants'

Reply [ECF No. 28], the full record, and is otherwise fully advised in the premises.  For the reasons

set forth below, Defendants' Motion to Dismiss [ECF No. 22] is **GRANTED**.  Plaintiffs' Amended

Complaint [ECF No. 5] is **DISMISSED WITH PREJUDICE**.

**BACKGROUND**[1]

    On December 15, 2022, Plaintiffs filed this putative class action against five

Defendants—Ferragamo USA Inc., S-Fer International Incorporated ("S-Fer"), Sator Realty Inc.

("Sator"), Saks Fifth Avenue LLC ("SFA"), and The Niemann Marcus Group, LLC [ECF No. 1

¶ 1].  The Court sua sponte dismissed the initial Complaint because every count in the initial

Complaint incorporated all preceding allegations, thus constituting an impermissible shotgun

pleading [ECF No. 4].  The Court instructed Plaintiffs to file an Amended Complaint by December

_____

[1] The facts in this section are drawn from Plaintiffs' Amended Complaint [ECF No. 5] and are
accepted as true for purposes of this Order.

22, 2022, and further instructed that "each count must identify the particular legal basis for liability and contain specific factual allegations that support each cause of action" [ECF No. 4 p. 2]. Plaintiffs timely filed the operative Amended Complaint on December 16, 2022—the same day the Court sua sponte dismissed the initial Complaint for being a shotgun pleading [ECF No. 5].

This class action lawsuit stems from Plaintiffs' purchase of "luxury" Ferragamo Belt Buckles (the "Belt Buckles") and from various representations allegedly made by Defendants regarding those belts. The Amended Complaint alleges that "Defendants represent to the public that the Ferragamo Belt Buckles – which are sold for hundreds of dollars on their own and as a key component of belts which sell for even more – are high quality fashion accessories, fit for such purposes" [ECF No. 5 ¶ 17]. Specifically, Plaintiffs point to the following three statements to support their claims:

1. "Ferragamo USA's parent company [and non-party to this lawsuit] boasts on its website that 'Ferragamo's exclusive features of **craftsmanship, quality of materials**, elegance and functionality take the shape of a vast collection of belts [sic] designs, merging **elegant buckles** and **high-end materials**, for a contemporary look that **speaks for understated luxury**.'" [ECF No. 5 ¶ 4 (emphasis in original) (quoting Ferragamo's parent company's website)];

2. "A website operated by SFA's sister entity [and non-party to this lawsuit] Saks.com LLC and marketing SFA's stores identifies Ferragamo as 'the standard of classic Italian elegance and **legendary craftsmanship** . . . .'" [ECF No. 5 ¶ 4 (emphasis in original) (quoting Saks.com LLC's website)];

3. "Nieman Marcus' website describes Ferragamo as '**synonymous with premium luxury goods**, such as handbags, accessories, jewelry, timepieces, eyewear, and fragrances . . . [b]eyond bags, Salvatore Ferragmo offers a number of luxury

accessories, including slim leather belts **with the iconic Gancini buckle**, silk printed scarves, and chic sunglasses'" [ECF No. 5 ¶ 4 (emphasis in original) (quoting Nieman Marcus's website)].

Based on these statements, the Amended Complaint alleges that "Defendants are impliedly warranting that the Ferragamo Belt Buckles are suitable for regular and expected use as a fashion accessory" [ECF No. 5 ¶ 17]. Plaintiffs assert, however, that these Belt Buckles are "defectively manufactured and/or designed," because the "metal buckle quickly becomes discolored and/or tarnished, rendering it unsightly, aesthetically unappealing, and ultimately useless for its intended purposes of providing a 'luxurious' fashion accessory" [ECF No. 5 ¶ 5]. Plaintiffs claim that "[t]his discoloration and/or tarnishing occurs regardless of the way in which customers use and care for the Belt Buckles and cannot be blamed on the consumers – it is a defect in the design or manufacturing of the Belt Buckles themselves" [ECF No. 5 ¶ 18]. Plaintiffs individually purchased Belt Buckles between "late 2020" and "early-to-mid 2021" from retail stores operated by Defendants S-Fer, Sator, SFA, and Nieman Marcus [ECF No. 5 ¶¶ 20–23]. Over the course of a few months to one year after purchasing the Belt Buckles, Plaintiffs allege that the Belt Buckles "began showing obvious discoloration and/or tarnishing of the Belt Buckle's metal" [ECF No. 5 ¶¶ 20–23]. Plaintiffs further assert that "customers who purchased the defective Ferragamo Belt Buckles have no easy option to either receive a full refund or an exchange once the defect becomes apparent. Instead, Defendants typically require Plaintiffs to pay even more money to replace the defective Ferragamo Belt Buckles" [ECF No. 5 ¶ 19].

Due to the above representations and discoloration and/or tarnishing of the metal Belt Buckles, the named Plaintiffs bring the following claims:

- Count One – Breach of the Implied Warranty of Merchantability (Against Defendants Ferragamo USA, S-Fer, and Sator) [ECF No. 5 ¶¶ 39–45];

CASE NO. 22-81923-CIV-CANNON/Reinhart

- Count Two – Breach of the Implied Warranty of Merchantability (Against Defendant SFA) [ECF No. 5 ¶¶ 46–52];

- Count Three – Breach of the Implied Warranty of Merchantability (Against Defendant Nieman Marcus) [ECF No. 5 ¶¶ 53–59];

- Count Four – Unjust Enrichment (Against All Defendants) [ECF No. 5 ¶¶ 60–64];

- Count Five – Violation of the Florida [Deceptive and Unfair] Trade Practices Act ("FDUTPA") (Against All Defendants) [ECF No. 5 ¶¶ 65–71].

Plaintiffs seek to bring these claims on behalf of a class comprised of :

> All persons or entities in the United States who made retail purchases of one or more Ferragamo Belt Buckles, either alone or as part of a belt, from a physical retail store operated by one of the Defendants, where such purchase occurred during the period between four years prior to the filing of this action and the date of the final disposition of this action and/or such subclasses as the Court may deep appropriate (the 'Class')

[ECF No. 5 ¶ 29].  Plaintiffs make a demand for, *inter alia*, compensatory damages, actual damages, disgorgement of profits, and injunctive relief "enjoining [Defendants from] any such future conduct" [ECF No. 5 pp. 19–20].

Defendants filed the instant Motion to Dismiss the Amended Complaint With Prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [ECF No. 22].  The Motion is ripe for adjudication [ECF Nos. 27, 28].

## LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  While a complaint "does not need detailed factual allegations," it must provide "more than

4

labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288–90 (11th Cir. 2010).

## DISCUSSION

### I.      Counts One through Three – Breach of the Implied Warranty of Merchantability

Defendants raise the following three arguments in favor of dismissal of Plaintiffs' claims for breach of implied warranty of merchantability: (1) the Amended Complaint does not contain any allegations that Plaintiffs provided Defendants with pre-suit notice as required by Section 672.607(3)(a) of the Florida Statutes [ECF No. 22 pp. 16–17]; (2) the Amended Complaint lacks allegations suggesting that the Belt Buckles fail to perform their ordinary purpose of clasping two ends of a belt and therefore does not plausibly allege that the Belt Buckles are unmerchantable [ECF No. 22 pp. 17–18]; and (3) Plaintiffs Fineman and Silva lack privity with Defendant Ferragamo USA Inc., without which Plaintiffs cannot recover economic losses for breach of an implied warranty [ECF No. 22 pp. 18–19]. The Court agrees with Defendants' first and second arguments and therefore need not address the final privity-related justification for dismissal.

### A.      Pre-Suit Notice Requirement

Section 672.607(3)(a) of the Florida Statutes requires that a buyer bringing an implied warranty of merchantability claim "must within a reasonable time after he or she discovers or

should have discovered any breach notify the seller of breach or be barred from any remedy." Fla. Stat. § 672.607(3)(a). The pre-suit notice requirements is intended to give the seller an opportunity to inspect the defected product and cure any breach prior to the initiation of litigation. *Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So. 2d 1262, 1264 (Fla. Dist. Ct. App. 1980); *Valiente v. Unilever U.S., Inc.*, No. 22-21507-CIV, 2022 WL 18587887, at *16 (S.D. Fla. Dec. 8, 2022) (quoting *Lamb v. Graco Children's Prod. Inc.*, No. 11CV477, 2012 WL 12871963, at *2 (N.D. Fla. Jan. 24, 2012)) ("'[T]he point of the notice requirement is to allow the warrantor an opportunity to cure the problem rather than defend a lawsuit.'"). "[T]here is no set formula that a notice must conform to in warranty cases." *Exam Brickell, LLC v. Bariven, S.A.*, No. 09-CV-20915, 2011 WL 13131263, at *33 (S.D. Fla. Aug. 16, 2011). While the notice does not need to directly inform the seller that the buyer regards the warranty as breached, the buyer is "obligated to bring the relevant problems and complaints in some objectively reasonable manner to the attention of the seller." *Id.* (citing *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1102 (11th Cir. 1983)). Ultimately, it is "[t]he buyer [who] bears the burden of showing that he gave the required notice within a reasonable time." *Royal Typewriter Co.*, 719 F.2d at 1102 (citing *Gen. Matters*, *Inc.*, 382 So. 2d at 1264).

Plaintiffs accept the existence of the pre-suit notice requirement but say they have satisfied it because the Amended Complaint alleges that "customers, including Plaintiffs, were not provided with an easy option to either obtain a refund or an exchange once the defect became apparent" [ECF No. 27 p. 12; ECF No. 5 ¶ 19 ("[C]ustomers who purchased the defective Ferragamo Belt Buckles have no easy option to either receive a full refund or an exchange once the defect become apparent. Instead, Defendants typically require Plaintiffs to pay even more money to replace the defective Ferragamo Belt Buckles.")].

These allegations are insufficient to "notify the seller of breach" as required by Section

672.607(3)(a).  Even accepting the contestable proposition that a demand for a refund alone could satisfy the pre-suit notice requirement, *see Aguila v. Ripa & Assocs., LLC*, 587 F. Supp. 3d 1159, 1165 (S.D. Fla. 2022), the Amended Complaint does not allege that any named Plaintiff made any such demand for a refund to any Defendant.  All that exists in the Amended Complaint is an allegation that certain undefined "customers, including Plaintiffs, were not provided with an easy option to either obtain a refund or an exchange once the defect became apparent" [ECF No. 27 p. 12; ECF No. 5 ¶ 19].  Yet that non-specific allegation does not plausibly suggest that any named Plaintiff actually brought the relevant problems and complaints in some objectively reasonable manner to the attention of Defendants; when those Plaintiffs provided such notice; or how those Plaintiffs provided such notice [ECF No. 28 p. 9 n.4].  *See Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1322–23 (S.D. Fla. 2021) ("The burden is on the plaintiff to show that he gave the required notice within a reasonable time in fulfillment of this threshold condition." (internal quotation marks omitted)).  In sum, even drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs have failed to meet their burden to show that they provided the required pre-suit notice to any Defendant.  Counts One through Three should be dismissed on this basis alone.

**B.     The Amended Complaint Does Not Plausibly Allege that the Belt Buckles are Unmerchantable**

Defendants argue that Counts One through Three also warrant dismissal because the Amended Complaint does not plausibly allege that the Belt Buckles cannot be used for their ordinary purpose—to clasp two ends of a belt together [ECF No. 22 pp. 17–18].  In response, Plaintiffs reframe the ordinary purpose of the subject Belts, saying their ordinary purpose is to be worn as a luxury fashion accessory [ECF No. 27 pp. 12–14 (stating "[t]he very reason" Plaintiffs bought the Belt Buckles was "for their aesthetic qualities"—qualities that "are rendered useless as a result of the Belt Buckles' premature tarnishing, rendering [them] unfit for their use as luxury

fashionwear.")].  Plaintiffs then cite various out-of-circuit cases, applying non-Florida law, for the proposition that "aesthetic defects can constitute a breach of the implied warranty of merchantability even where the product achieves its core function if a product's aesthetic qualities are part of the product's function as well" [ECF No. 27 p. 13].

"[A] warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Fla. Stat. § 672.314(1).  Among other things, goods are considered merchantable so long as they "[a]re fit for the ordinary purposes for which such goods are used[.]"  Fla. Stat. § 672.314(2).  Under Florida law, "the test of the breach [of an implied warranty] is an objective one . . . ."  *Putnam v. Roudebush*, 352 So. 2d 908, 910 (Fla. Dist. Ct. App. 1977).  "'The implied warranty of merchantability does not mean a promise by the merchant that the goods are exactly as the buyer expected, but rather that the goods *satisfy a minimum level of quality*.'"  *Masforce Eur., BVBA v. Mastry Marine & Indus. Design, Inc.*, No. 11-CV-1814, 2013 WL 12156533, at*9 (M.D. Fla. Oct. 24, 2013) (emphasis in original) (quoting *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 69 (Mo. Ct. App. 2011)).

Applying these legal principles, the Court determines that the Amended Complaint fails to plausibly allege that the subject Belt Buckles cannot be used for their ordinary purpose of clasping two ends of a belt together.  Although Plaintiffs attempt to recast the ordinary purpose of the Belt Buckles as a "luxury fashion item," the Court agrees with Defendants, accepting the Amended Complaint as true, that the ordinary purpose of the Belt Buckles tracks their core function—to clasp two ends of a belt together.  This determination aligns with the analysis in *Plain Bay Sales, LLC v. Gallaher*, No. 18-CV-80581, 2022 WL 409557 (S.D. Fla. Feb. 10, 2022).  In *Plain Bay Sales, LLC*, the plaintiff brought, among other claims, a claim for a breach of implied warranty of merchantability against a horse seller because the horse that the plaintiff purchased was allegedly not suitable for an inexperienced and petite female rider competing in equestrian events.  *Id.* at

*14.  The court granted summary judgment in favor of the defendant on that claim, finding no record evidence that the horse "was a completely defective horse" even if it did not meet the "specific criteria and requirements tailored for [the small female] as a rider."  *Id.*  That is, there was no evidence that the horse could not be used for its ordinary purpose of transporting riders on its back.  Similarly, in *Johnson v. FCA USA LLC*, 555 F. Supp. 3d 488 (E.D. Mich. 2021), the district court dismissed the plaintiffs' breach of implied warranty of merchantability claims regarding defects which caused the interior panels of luxury cars to peel back, revealing the vehicles' internal wiring.  *Id.* at 504.  The court determined that the defendant's marketing of the vehicles as "'premium luxury cars' that feature 'attractive styling'" did not lead to a plausible inference that the vehicles' ordinary purpose was one of aesthetics.  *Id.*  In other words, the court reasoned, the vehicles were not "'designed and built' to be pieces of art or otherwise displayed" but instead were designed "to be driven like most other vehicles on the market."  *Id.*  Because the paneling defect was cosmetic only and did not render the vehicles unfit for their ordinary purpose, the court dismissed plaintiffs' implied warranty of merchantability claims.  *Id.*

Here, Plaintiffs do not dispute that the Belt Buckles achieve the purpose of clasping two ends of a belt together, instead focusing exclusively on what they describe as a failure to satisfy certain subjective, "aesthetic qualities" [ECF No. 27 p. 14].  This cosmetic failure to meet a subjective standard of aesthetics does not render the Belt Buckles unfit for their ordinary purpose. Nor have Plaintiffs pointed to any Florida caselaw endorsing a view of ordinary purpose that would support their aesthetic-based theory.  In the end, as in *Plain Bay Sales, LLC* and *Johnson v. FCA USA LLC*, the Court hews to the core function of the item at issue, in this case Belt Buckles, and agrees with Defendants that the Amended Complaint fails to allege that the Belt Buckles cannot perform their core function of holding two ends of a belt together.  Perhaps there exists some other context in which an aesthetic-only defect triggers a plausible claim for breach of implied warranty,

i.e., where the item at issue is by its very nature cosmetic,[2] but not in the case of Belt Buckles as alleged here, and certainly not without a more definitive indication supporting that theory from Florida state courts.  Plaintiffs' implied warranty of merchantability claim fails.

A final word about the non-Florida authorities on which Plaintiffs rely [ECF No. 27 pp. 13–14].  Two of the four cases concern defects affecting the ordinary and safe use of products and do not stand for the broad proposition that an aesthetic defect alone can render a product unfit for its ordinary use.  *See Isip v. Mercedez-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (Cal. Ct. App. 2007) (determining that a vehicle that provides transportation may still be in an unsafe condition and contain defects if it "smells, lurches, clanks, and emits smoke over an extended period of time"); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2009 WL 1635931, at *7–8 (N.D. Cal. June 5, 2009) (determining that a bed's ordinary function is "providing a comfortable sleep environment without causing undue harm to [the user's] health," and the mere fact "that a person still may sleep on a moldy bed does not bar as a matter of law a claim for breach of implied warranty of merchantability").[3]  Plaintiffs' other two cited authorities, both involving outdoor decks, suggest that an outdoor deck might have an ordinary purpose of enhancing the appearance of a home for purposes of an implied warranty claim.  *See In re Azek Bldg. & Prods. Mktg. & Sales Pracs. Litig.*, 82 F. Supp. 3d 608, 616 (D.N.J. 2015) (finding a fact issue  as to whether the "essential function of [] decking includes aesthetic improvement of property"); *Fleisher v. Fiber Composites, LLC*,

---

[2] *See Golden v. Den-Mat Corp.*, 276 P.3d 773, 798–99 (Kan. Ct. App. 2012) (noting that "veneers are, by their very purpose, cosmetic," and if they fail to meet that purpose "they likely would not meet the standards of merchantability under the UCC"); *AutoZone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 949 (W.D. Tenn. 2010) (determining that exterior paint that "cracked, peeled, and faded" was not fit for its "ordinary purpose of covering the walls of buildings").

[3] *See also Kail v. Wolf Appliance, Inc.*, No. 15-CV-3513, 2017 WL 3608242, at *6–7 (E.D.N.Y. Aug. 21, 2017) (determining that porcelain peeling on an oven might "affect the functionality of the oven" because "porcelain pieces may fly onto the food").

No. 12-1326, 2012 WL 5381381, at *6–7 (E.D. Pa. Nov. 2, 2012) (denying motion to dismiss in part because it was reasonable to infer that the ordinary use of outdoor decking material was in part to increase the aesthetic appeal and enhance the outdoor enjoyment of residential properties). Whatever the merits of that out-of-circuit view as relates to outdoor decks, the Court is satisfied in this case that the ordinary purpose of the Belt Buckles at issue here is to clasp two ends of a belt together, and Plaintiffs raise no challenge to the Belt Buckles in that respect.

Because the Amended Complaint does not allege that the Belt Buckles at issue fail to perform their core function of clasping two ends of a belt together—and because Plaintiffs make no suggestion that they could amend their complaint to show otherwise—dismissal of Counts One through Three with prejudice is warranted. *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)).  Plaintiffs have failed to plausibly allege that the Belt Buckles are unmerchantable as required to state a claim for a breach of the implied warranty of merchantability.

## II.    Count Four – Unjust Enrichment

To state a claim for unjust enrichment, Plaintiffs must allege that (1) Plaintiffs conferred a benefit on Defendants, who have knowledge thereof; (2) Defendants voluntarily accepted and retained the benefit; and (3) the circumstances are such that it would be inequitable for Defendants to retain the benefit without first paying the value thereof to Plaintiffs. *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. Dist. Ct. App. 2018).  The Florida Supreme Court recently answered a certified question from the Eleventh Circuit and held, with respect to the third element, that it is not inequitable for a defendant to retain payment when the defendant "gave value in exchange" for the payment.  *Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022).  The Eleventh Circuit, applying the Florida Supreme Court's holding, determined that the plaintiff "failed to state a claim for unjust enrichment" because the defendant

had given the plaintiff "value in exchange" for the plaintiff having paid a convenience fee when paying his traffic ticket online. *Pincus v. Am. Traffic Sols., Inc.*, 25 F.4th 1339, 1340–41 (11th Cir. 2022).

Defendants argue that the *Pincus* decision mandates dismissal of Count Four of the Amended Complaint because it is undisputed that Defendants "gave value in exchange" for Plaintiffs' payment by providing Plaintiffs with the Belt Buckles [ECF No. 22 pp. 19–20]. Plaintiffs respond that "[w]hether a party's unjust enrichment claim is barred because the party has been provided fair value or adequate consideration for the benefit allegedly conferred is a material question of fact that cannot be determined at the motion to dismiss stage" [ECF No. 27 p. 15 (citing *HPC U.S. Fund 1, LP v. Wood*, 13-61825-CIV, 2015 WL 11700249, at *4 (S.D. Fla. 2015); *Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1323 (M.D. Fla. 2009))]. But the cases on which Plaintiffs rely pre-date the Eleventh Circuit's opinion in *Pincus* in which the Eleventh Circuit affirmed the district court's dismissal of an unjust enrichment claim at the motion to dismiss stage. *Id.* Because it is undisputed that Defendants, in exchange for Plaintiffs' payment, gave value to Plaintiffs in the form of Belt Buckles that perform their function of clasping two ends of a belt together [ECF No. 5 ¶¶ 20–23], Plaintiffs' unjust enrichment claim fails as a matter of law in accordance with *Pincus*. Count Four of the Amended Complaint is due to be dismissed with prejudice.[4]

## III.   Count Five – Violation of FDUTPA

To state a claim for damages under FDUTPA, Plaintiffs must allege facts plausibly establishing the following: (1) Defendants engaged in a deceptive act or unfair practice; (2) which

---

[4] Defendants also argue that Count Four should be dismissed because Plaintiffs do not allege that they lack an adequate remedy at law and do not allege that they conferred a benefit on Ferragamo USA Inc. In light of the Court's determination applying *Pincus*, the Court need not address these alternative theories for dismissal.

caused; (3) Plaintiffs to sustain actual damages. *Stewart Agency, Inc. v. Arrigo Enter., Inc.*, 266 So. 3d 207, 212 (Fla. Dist. Ct. App. 2019) (citing *Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204 (Fla. Dist. Ct. App. 2012)).  In order for an act to be deceptive, it must be one "likely to deceive a consumer acting reasonably in the same circumstances." *State v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. Dist. Ct. App. 2004) (citing *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000)).  Plaintiffs contend that Defendants engaged in deception by marketing the Belt Buckles at issue as luxury goods [ECF No. 5 ¶¶ 4, 17–18, 68; ECF No. 27 pp. 5–8].[5] Defendants argue, *inter alia*, that the statements amount at most to "non-actionable puffery," and that Plaintiffs impermissibly seek to hold Defendants liable for statements that were made either by non-parties to this action or by Defendant Neiman Marcus only [ECF No. 22 pp. 7–10].[6] Plaintiffs respond that the statements at issue go beyond mere puffery and further request "leave to amend the operative complaint to add [the] 'non-party affiliates' as additional defendants" [ECF No. 27 pp. 5–8].  For the following reasons, the Court agrees with Defendants; the statements at issue are non-actionable puffery, rendering futile any amendment to add the non-party affiliates

---

[5] Plaintiffs' Amended Complaint purports to bring a FDUTPA claim based on both a misrepresentation and omission theory [ECF No. 5 ¶¶ 65–71].  In their Motion to Dismiss, Defendants argue that Plaintiffs failed to allege any actionable misrepresentations or omissions [ECF No. 22 pp. 7–10].  Plaintiffs did not respond to Defendant's argument regarding their omission theory [ECF No. 27 pp. 5–8].  Accordingly, this Order only addresses Plaintiffs' misrepresentation theory.

[6] As discussed above, the statements at issue are: (1) Ferramo USA's parent company's statement that "Ferragamo's exclusive features of craftsmanship, quality of materials, elegance and functionality take the shape of a vast collection of belts [sic] designs, merging elegant buckles and high-end materials, for a contemporary look that speaks of understated luxury"; (2) Saks.com LLC's identification of Ferragamo as "the standard of classic Italian elegance and legendary craftsmanship"; and (3) Neiman Marcus's description of Ferragamo as "synonymous with premium luxury goods, such as handbags, accessories, jewelry, timepieces, eyewear, and fragrances . . . [b]eyond bags, Salvatore Ferragamo offers a number of luxury accessories, including slim leather belts with the iconic Gancini buckle, silk printed scarves, and chic sunglasses" [ECF No. 5 ¶ 4].

who made the statements.

For the alleged misrepresentations to be actionable, they must go beyond exaggeration and assign the Belt Buckles a specific quality that they do not possess. *United States v. Simon*, 839 F.2d 1461, 1468 (11th Cir. 1988) (citing *United States v. New S. Farm & Home Co.*, 241 U.S. 64, 71 (1916)). The Eleventh Circuit has noted that a statement goes beyond mere puffery when it is empirically verifiable and "can be affirmatively disproven" as opposed to an "opinion." *Next Century Commc'ns Corp. v. Ellis*, 318 F. 3d 1023, 1028 (11th Cir. 2003); *see also Edmundson v. Procter & Gamble Co.*, 537 F. App'x 708, 709 (9th Cir. 2013) ("Specific, quantifiable 'statements of fact' that refer to a product's absolute characteristics may constitute false advertising, while general, subjective, unverifiable claims are 'mere muffery' that cannot."). Plaintiffs contend that the statements at issue assigned specific qualities and conveyed "measurable value" by comparing the Belt Buckles to "the standard of Italian luxury fashion wear" and by making "express representations regarding the quality of materials used to craft the Belt Buckles" [ECF No. 27 p. 7].

In support of their argument, Plaintiffs rely on *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333 (S.D. Fla. 2014), and *Florida Breckenridge, Inc. v. Solvay Pharm., Inc.*, No. 97-8417-CIV, 1998 WL 468753 (S.D. Fla. Mar. 18, 1998)). Neither of these cases, however, supports Plaintiffs' argument. In *Marty*, the district court determined that a beer brewer's statement that their beer was "German Quality" was not mere puffery because the statement could not be considered "in a vacuum." 43 F. Supp. 3d at 1342. The court determined that, when viewed in the context of the brewer's prior statements that the beer at issue was a "German beer" with a "139-year history of being brewed in Germany," "a reasonable consumer may be misled to believe that [the beer] is an imported beer brewed in Germany"; a fact which can be affirmatively proven or disproven. *Id.* Similarly, in *Florida Breckenridge, Inc.*, the district court determined that a

pharmaceutical company's claim that its drug "compared to" its generic equivalency was not puffery because the statement "implie[d] that the drug in question ha[d] satisfied certain tests and may be properly labeled as a generic equivalent." 1998 WL 468753, at *9. In other words, whether the drug had satisfied certain tests was a fact which could be empirically verified.

In the present case, none of the statements at issue can be affirmatively proven or disproven. Unlike *Marty*, where the plaintiffs alleged that the brewer's statement that its beer was "German Quality" caused the plaintiffs to incorrectly believe that the beer was brewed and imported from Germany, Plaintiffs do not allege that the representations regarding Ferragamo's "Italian elegance" caused them to incorrectly believe the Belt Buckles were made and imported from Italy. Instead, Plaintiffs take issue with the subjective quality of the Belt Buckles and their alleged propensity to tarnish quickly [ECF No. 27 pp. 8–9]. Yet nothing in the statements at issue could lead a reasonable consumer to believe that the Belt Buckles had been tested to an objective standard like the drugs at issue in *Florida Breckenridge, Inc.* At best, the statements on which Plaintiffs rely for their FDUTPA claim provide an opinion that Ferragamo products, including the Belt Buckles, are generally of a high quality; an opinion which cannot be affirmatively proven or disproven. Courts in this district routinely determine that highly subjective statements like the ones at issue here amount to nonactionable puffery.[7] The Court aligns itself with this strong

---

[7] *See, e.g, Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1341 (S.D. Fla. 2013) (determining that a manufacturer's statements that its motorcycle was "in a class of its own" and "the world's ultimate touring motorcycle" constituted "textbook puffery and mere opinion"); *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1342 (S.D. Fla. 2012) (determining that a defendant's statement on its website that it provided a "luxury cruise vacation" was "non-actionable puffery and sales talk"); *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1341 (S.D. Fla. 2012) (concluding that a defendant's statements that its timeshare units "were desirable" and "worth more than what [the defendant] was charging for them" was "nothing more than opinions, or puffery"); *Gentry v. Harborage Cottages-Stuart, LLLP*, 602 F. Supp. 2d 1239, 1252–53 (S.D. Fla. 2009), *aff'd in part, vacated in part on other grounds*, 654 F.3d 1247 (11th Cir. 2011) (concluding that property developer's various statements that its condominiums were luxurious, extraordinary, and exceptional, among other similar statements,

CASE NO. 22-81923-CIV-CANNON/Reinhart

persuasive authority: the alleged misrepresentations at issue are nothing more than mere puffery and therefore cannot form the basis of a FDUTPA claim.  Count Five of the Amended Complaint is due to be dismissed with prejudice.[8]

**CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss the Amended Complaint with Prejudice [ECF No. 22] is **GRANTED**.

2. The Complaint [ECF No. 5] is **DISMISSED WITH PREJUDICE**.

3. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 12th day of May 2023.


**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**


cc:      counsel of record

---

fell "squarely within the scope of opinions, exaggerations and general characterizations that constitute puffery").

[8] Because non-actionable puffery cannot form the basis of a breach of warranty claim, Counts One through Three of the Amended Complaint likely could be dismissed on that basis as well, although Defendants did not move to dismiss on that ground.  *See Aprigliano*, 979 F. Supp. 2d at 1341 (determining that representations which are nothing more than mere puffery "cannot form the basis of a [] warranty").

16